**UNITED STATES of America,
Plaintiff,**

v.

**GREENWICH MILL & ELEVATOR COM-
PANY, a corporation, Defendant.**

**No. C 68–5.**

United States District Court
N. D. Ohio, W. D.

Oct. 25, 1968.

Rolf H. Scheidel, Asst. U. S. Atty., Toledo, Ohio, for plaintiff.

Kenneth Thornton, Willard, Ohio, for defendant.

## OPINION

DON J. YOUNG, District Judge.

This cause came before the Court on plaintiff's motion to strike the defend-

ant's second defense or in the alternative, to grant partial summary judgment. Having examined the authorities, such as they are, this Court has come to the conclusion that the motion of plaintiff to strike should be granted.

In August of 1965 the Farmers Home Administration made a loan to Sheldon and Susan Butler in the amount of $2000. The Administration took a security interest in the crops grown on the land of the Butlers and in certain farm machinery which is not in dispute in this matter. A security agreement was signed and a financing statement was filed in the Office of the County Recorder of Huron County. The security agreement and the financing statement both specifically provide that the debtor is not to dispose of the collateral without the written consent of the secured party.[1]

The defendant is a grain elevator and farm supply corporation operating in the general area of the Butlers' farm. Knowing of the plaintiff's security interest in the crops, the defendant sold certain supplies to the Butlers to enable them to continue in their farming operating and thus to produce these crops. In later October of 1966, the defendant combined 306.17 bushels of soybeans then growing on the Butlers' farm and admittedly covered by the plaintiff's security interest. These beans were worth $811.31 with combining costs of $140.00 which the plaintiff admits were properly chargeable to this fund. The plaintiff sues to recover the balance of this fund, or $671.31, from the defendant on the grounds that the defendant has converted it. The defendant has asserted

1. The security agreement provides:
"(8) Borrower will not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any of the Borrower's rights therein, or suffer others to do so, without prior written consent of the Government; and will not permit the collateral to become subject to any other security interest or to be levied upon under any legal process, or permit anything to be done that may impair the value of the collateral or security intended to be afforded hereby except that Borrower may use harvested crops covered hereby in amounts necessary to care for livestock covered hereby or by any other security agreement or mortgage to the Government."
The financing statement simply provides:
"2. Disposition of such collateral is *not* hereby authorized." (Emphasis original.)

as its second defense that it is entitled to the fund on the basis of an equitable set-off against the amount owed it by the Butlers. The defendant does not assert that it is in any way a secured creditor as to the soybeans in question.[2]

▮▮ Before the question of the claimed set-off can be determined it is necessary to determine whether the Administration has a security interest in the soybeans in the possession of the defendant. It is clear that the Administration is subject to the law of Ohio, which in this case is Article IX of the Uniform Commercial Code. The security interest of the Administration attached as soon as the crop was planted. Uniform Commercial Code § 9–204 [hereinafter cited as U.C.C.], Ohio Rev.Code § 1309.15; U.C.C. § 9–203, Ohio Rev. Code § 1309.14. The interest of the agency was perfected by filing. U.C.C. § 9–303, Ohio Rev.Code § 1309.22; U.C.C. § 9–302, Ohio Rev.Code § 1309.21. The question then becomes whether the transaction between the Butlers and Greenwich Mills was a sale, and if so, whether the security interest of the Administration continued through this sale and was attached to the soybeans in the hands of the defendant.

▮ A sale is defined as the passing of title from the seller to the buyer for a price. U.C.C. § 2–106, Ohio Rev. Code § 1302.01(A) (11). A contract for the disposition of growing crops to be severed from the land is a contract for the sale of goods, and thus a sale within the terms of the Uniform Commercial Code. U.C.C. § 2–107(2), Ohio Rev.Code § 1302.03(B). The definitions used in Article II of the Uniform Commercial Code determine whether the transaction is a sale. U.C.C. § 9–105(3), Ohio Rev.Code § 1309.01(C). Both parties agree that the transaction is a sale, and although there is a possible question as to whether the consideration was valid, this issue is not before the Court for decision.

▮▮ Where a sale is authorized by the security agreement, the buyer takes free of the security interest. U.C.C. § 9–306(2), Ohio Rev.Code § 1309.25(B). Otherwise the security interest continues in the original collateral and in the identifiable proceeds, the latter only being perfected for ten days before a new filing is necessary. U.C.C. § 9–306, Ohio Rev.Code § 1309.25. Since proceeds were not claimed in the financing statement there is no problem with the security interest having been waived by such a claim. U.C.C. § 9–306 (Official Comment No. 3).[3]

2. Actually defendant almost has a prior perfected security interest in the soybeans. Under Uniform Commercial Code § 9–312(2), Ohio Rev.Code § 1309.31 (B), a perfected security interest in crops which is taken in return for money with which to raise those crops and which is given within three months of the time that the crops become growing, is prior to an earlier perfected security interest which secures debts due more than six months at the time that the crops become growing. Perfection can be by possession of the secured party. U.C.C. § 9–302(1) (a), Ohio Rev.Code § 1309.-21(A) (1). But the security interest does not attach and thus cannot be perfected until a security agreement has been executed. U.C.C. § 9–204(1), Ohio Rev.Code § 1309.15(A); U.C.C. § 9–303 (1), Ohio Rev.Code § 1309.22(A). The defendant has not asserted a security interest so that it is unnecessary for the Court to determine the question of priority at this point.

3. The pertinent portion of the comment reads:

"In many cases a purchaser or other transferee of collateral will take free of a security interest: in such cases the secured party's only right will be to proceeds. The transferee will take free whenever the disposition was authorized; the authorization may be in the original security agreement or otherwise given. A claim to proceeds in a filed financing statement might be considered as impliedly authorizing sale or other disposition of the collateral, depending upon the circumstances of the parties, the nature of the collateral, the course of dealing between the parties and the usage of the trade * * *" U.C.C. § 9–306 (Official Comment No. 3).

A buyer in the ordinary course also takes free from a security interest by purchase of the goods unless he knows that the sale is in violation of the security agreement, or unless he is a buyer purchasing farm products from a person engaged in farming operations. U.C.C. § 9–307, Ohio Rev.Code § 1309.26. Defendant is not a buyer in the ordinary course since it took in satisfaction of an antecedent indebtedness.[4] U.C.C. § 1–201(9), Ohio Rev.Code § 1301.01(I). Likewise, the soybeans in question are farm products, U.C.C. § 9–109(3), Ohio Rev.Code § 1309.07(C), and thus are excepted from the operation of Uniform Commercial Code § 9–307(2). Ohio Rev.Code § 1309.26(B).

Having determined that the security interest continues in the harvested soybeans for the purposes of Uniform Commercial Code § 9–307, it is necessary to determine whether the continuance of the security interest was defeated under Uniform Commercial Code § 9–306, or under any other principles of general law which may be applicable. U.C.C. § 1–103, Ohio Rev.Code § 1301.03. Defendant has alleged that the plaintiff through its agent Mr. Kyle stated that the defendant would be paid for its extension of credit to the Butlers from the proceeds of the farming operations. This statement does not constitute an authorization of sale to the defendant. Actually all that it could possibly be would be a waiver of the security interest or an estoppel, which is the object of the third defense. While not directly before the Court, this defense being predicated on estoppel rather than waiver, it must be partially determined, by determination of whether there is a waiver, before the Court can determine the validity of the second defense.

[10] Assuming for the moment that the statement of plaintiff's agent Kyle does constitute a waiver under the pre-Code law, it is necessary to determine whether the Uniform Commercial Code has affected this law. The Court has only been able to find one case which has faced this question. In the case of Clovis Nat'l Bank v. Thomas, 77 N.M. 554, 425 P.2d 726 (1967), the Supreme Court of New Mexico determined that the Code did not intend to displace the doctrine of waiver. While this Court is in substantial agreement with the New Mexico Court, disagreement does exist as to the scope of the New Mexico Court's statement.[5] This Court believes that the Uniform Commercial Code has indeed affected the doctrine of waiver and that the doctrine has been displaced

4. The Uniform Commercial Code § 1–201 (9) defines buyer in the ordinary course as follows:

"(9) 'Buyer in the ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of ownership right or security interest of a third party in the goods buys in the ordinary course from a person in business of selling goods of that kind but does not include a pawnbroker. 'Buying' may be for cash or by exchange of other property or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or partial satisfaction of a money debt."

Clearly it is the manifest intent of the drafters to exclude all of those who do not give new value but the section is properly drawn in a manner sufficiently broad to allow the inclusion of the rare case which should be considered in the ordinary course. The definition is very close to the well known bona fide purchaser for value and without notice of prior equities who has existed throughout the major part of English legal history, but the code makes a sufficient number of changes in his powers and status to properly call for a new name and a rethinking of his powers.

5. The New Mexico Court assumes the position that since the Code does not specifically displace the doctrine of waiver, that said doctrine continues to supplement the Code in full force under U.C.C. § 1–103:

"* * * There being no particular provision of the code which displaces the law of waiver, and particularly waiver by implied acquiescence or consent, the code provisions are supplemented thereby. * * *" Clovis Nat'l Bank v. Thomas, supra, at 733.

to some extent by certain provisions of the Code and modified by others. The Uniform Commercial Code drafters in adopting § 9–306(2), Ohio Rev.Code § 1309.25(B), clearly intended to codify the doctrine of waiver. While this Court is not faced with a situation where the pre-Code doctrine of waiver is in conflict with this section, the Court will venture to say that should such a conflict arise, the Uniform Commercial Code should govern and the pre-Code law should not be given concurrent effect.

■ Likewise, the drafters have codified a portion of the pre-Code doctrine of waiver in § 9–205, Ohio Rev. Code § 1309.16. This section overrules the well known case of Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991 (1925), and in so doing removes from the secured party the duty of strictly policing the collateral in the hands of the debtor.[6] While this section is not directly controlling in the matter before the Court, it indicates a general policy on the part of the Uniform Commercial Code drafters towards a more liberal type of dealing with the collateral by both the secured party and the debtor. If this section is to have any real meaning, it must permit the debtor and the secured party to make some preliminary arrangements for the disposition of the collateral without invoking the doctrine of waiver. Thus, the broad statement of the New Mexico Court regarding the continuance of the doctrine

of waiver goes too far in the opinion of this Court. Clovis Nat'l Bank v. Thomas, supra. However, this Court agrees with that Court that the doctrine of waiver does supplement the Code.

■ The statement of plaintiff's agent Kyle does not rise to the level of waiver under the Code, regardless of whether it would have done so before the Code. It is simply a preliminary dealing regarding disposition of the collateral to an individual knowing of the existence of the security interest, which as we have previously stated, does not constitute a waiver under the Uniform Commercial Code regardless of whether it did before the Uniform Commercial Code. The question of whether this statement estops the plaintiff from denying the right of the defendant to these beans is not before the Court.

■ The security interest of the plaintiff therefore continues in the soybeans which are now in the possession of the defendant. The set-off which the defendant claims arises out of its dealings with the Butlers. It is the general rule that a set-off only exists between the parties to the transaction from which the set-off arises, or persons standing in the place of these parties, and only when they arise from similar transactions. Nichols v. Metropolitan Life Ins., Co., 137 Ohio St. 542, 31 N.E.2d 224 (1941); Witham v. South Side Building & Loan Assn., 133 Ohio St. 560, 15 N.E.2d 149 (1938). This is not such a case. Were this an attempt to reach

---

**6.** "A security interest is not invalid or fraudulent against creditors by reason of liberty in the debtor to use, commingle or dispose of all or part of the collateral, including returned or repossessed goods, or to collect or compromise accounts, contract rights or chattle paper, or to accept the return of goods or make repossessions, or to use, commingle or dispose of proceeds, or by reason of the failure of the secured party to require the debtor to account for proceeds or replace collateral. * * *" U.C.C. § 9–205, Ohio Rev.Code § 1309.16. The official comments to this section proceed that the purpose of this sec-

tion was to protect the floating lien on inventory, etc., from the overly strict requirements placed upon it by the Benedict v. Ratner rule. While the policy of this rule permitting a secured creditor to gain a stranglehold on the essence of the debtor's business and the essence of the ability of the debtor to pay his general creditors can be questioned, this is primarily a matter for the legislature to determine, particularly in light of the relative newness of the statute, which makes the statute a declaration of current policy by the legislature.

the soybeans in the hands of the defendant by a creditor's bill, the result might be different, but it is not. Therefore, since no possibility of a set-off between defendant and plaintiff exists, the plaintiff is entitled to have the second defense of the defendant stricken. An order will be entered in accordance with the foregoing opinion.