Rachel OSBORN, Plaintiff in Error,

v.

The FIRST NATIONAL BANK OF HOLD-
ENVILLE, Oklahoma, a corporation,
Defendant in Error.

No. 42020.

Supreme Court of Oklahoma.

June 16, 1970.

William A. Vassar, Chandler, for plaintiff in error.

Erwin & Erwin, Chandler, for defendant in error.

Doerner, Stuart, Saunders, Daniel & Langenkamp, William C. Anderson, R. Thomas Seymour, Tulsa, for amicus curiae.

HODGES, Justice.

This appeal is from a judgment rendered upon a jury verdict in favor of plaintiff in the District Court of Lincoln County in a replevin action. Parties will be referred to as they appeared below.

The question involved in this appeal is who has paramount title as between two innocent parties: (1) the purchaser of an used automobile following a repossession by original dealer-assignor of a security interest (defendant, Rachel Osborn); or (2) the assignee of a security interest (plaintiff, The First National Bank of Holdenville).

Buddy's Used Cars was the original owner of the car in question. The car was sold by Buddy to one Dickie Tiger and his wife, the original purchasers, who executed a promissory note for the balance of the purchase price and a financing statement and security agreement in favor of Buddy. Buddy in turn assigned the note and security agreement with recourse to the plaintiff. Tiger made one payment on the car and defaulted. It appears from the record that the payment was made to Buddy's Used Car lot and not the plaintiff. Tiger purchased the car in March and sometime in the month of June, the car was either picked up or repossessed by Buddy for non-payment of the note.

After the repossession, Buddy's Used Car lot, which was located in Hughes County, either sold the car to Jack Washburn, a used car dealer in Pottowatomie County, or transferred the car as payment on a prior debt. Washburn in turn sold the car to a used car dealer in the same County by the name of Walling, who then sold it to the defendant in Pottowatomie County. Defendant resides in Lincoln County.

Plaintiff filed notice of the transaction between Buddy's and Tiger and the assignment in Hughes County in March, and also filed notice of these transactions in Lincoln County in August. The filing in Lincoln County was after the purchase of the car by the defendant.

Plaintiff asserts its security interest was perfected and that defendant cannot take better title than that of original seller, Buddy's Used Cars. The question then arises whether Buddy's sale to Washburn defeated the bank's (plaintiff) perfected security interest.

The Oklahoma Uniform Commercial Code does not make a distinction between automobiles and other chattels as do some states. In our jurisdiction, a buyer of a used car from a used car dealer is under

the same obligations and is entitled to the same protection as any other buyer of another chattel under the Commercial Code.

■ The evidence is conflicting as to the status of Washburn. There is some evidence the car was purchased in cash by Washburn from Buddy. Other evidence indicates the car was transferred by Buddy to Washburn as payment on a prior debt. If Washburn's status is that of a creditor and the sale is made to him upon satisfaction of an antecedent indebtedness, then in that event, Washburn is not a "buyer in ordinary course of business" as defined by the code in 12A O.S. 1–201(9). United States v. Greenwich Mill & Elevator Co., D.C.Ohio, 291 F.Supp. 609. If Washburn is not a "buyer in ordinary course of business" then he is not entitled to the protection of 12A O.S. 9–307 or the entrusting provision of the code as provided in 12A O.S. 2–403(2). However, this factual conflict, and its significance, does not need to be resolved in view of the applicability of the following provision of the code. Title 12A O.S. 9–306(5) provides:

"If a sale of goods results in an account or chattel paper which is transferred by the seller to a secured party, and if the goods are returned to or are repossessed by the seller or the secured party, the following rules determine priorities:

(a) If the goods were collateral at the time of sale for an indebtedness of the seller which is still unpaid, the original security interest attaches again to the goods and continues as a perfected security interest if it was perfected at the time when the goods were sold. If the security interest was originally perfected by a filing which is still effective, nothing further is required to continue the perfected status; in any other case, the secured party must take possession of the returned or repossessed goods or must file.

(b) An unpaid transferee of the chattel paper has a security interest in the goods against the transferor. Such security interest is prior to a security interest asserted under paragraph (a) to the extent that the transferee of the chattel paper was entitled to priority under Section 9–308.

(c) An unpaid transferee of the account has a security interest in the goods against the transferor. Such security interest is subordinate to a security interest asserted under paragraph (a).

(d) A security interest of an unpaid transferee asserted under paragraph (b) or (c) must be perfected for protection against creditors of the transferor and purchasers of the returned or repossessed goods."

■ This provision is new in Oklahoma. It deals with goods and merchandise that have been repossessed or returned to the dealer or merchant by the purchaser. Subsection 5(d) specifically deals with lien priorities against creditors of the dealer-transferor and purchasers of the returned or repossessed goods. It provides that when mortgaged goods are returned to or repossessed by the dealer that the original perfection of the lien does not automatically carry over to the returned car. In such instances, the holder of the chattel paper must do one of two things to protect its security interest: (1) take possession of the returned or repossessed car; or (2) reperfect a new security interest as to the dealer and file as to it. See, Uniform Commercial Code Comment, 12A O.S.1961, 9–306 at pp. 338–340.

⋅ Anderson, "Uniform Commercial Code" at Section 9–306–10, states:

"Moreover, this security interest of the account transferee must be perfected in order to protect it against the creditors of the transferor-seller and subsequent purchasers of the returned or repossessed goods." Citing Section 9–306(5) (d) UCC.

Gilmore in Vol. 2, Section 275, p. 741 of "Security Interest in personal Property" states:

"Subsection (5) of Section 9–306, expressly covers returns and repossessions after a sale has given rise to accounts or to chattel paper; * * *. Since the interest in the instrument could have been perfected only by possession, there will of necessity have to be a reperfection of the interest, by taking possession of the goods or by filing, if it is to be 'Protected' (under paragraph (d) against the transferor's creditors and purchasers from him."

■ In the present case, plaintiff bank did not pursue either alternative. Their security interest, therefore, had no priority over Washburn even if he was a creditor of Buddy's and his purchase of the car was brought about by a cancellation of a debt.

■ Plaintiff bank, however, contends they should not be bound by Buddy's unencumbered sale of the car to Washburn because the car was either returned to Buddy or was repossessed by Buddy *without their knowledge or consent.* Assuming, arguendo, that plaintiff's security interest would be protected without reperfecting it because plaintiff did not consent to or had knowledge of the repossession by Buddy, under the facts herein presented, we find the plaintiff is estopped from denying Buddy's right to possession with apparent authority to sell.

The plaintiff bank had established regular course of business with Buddy prior to this transaction. They had on occasion "floor planned" cars with Buddy and had discounted promissory notes given by Buddy's customers. In the present transaction, although the financing statement and security agreement was signed and executed by Tiger as buyer, it was assigned by Buddy to the plaintiff bank "with recourse," thereby making Buddy liable in the event of default by Tiger. The agreement also required Buddy to repurchase the contract upon demand after any default by Tiger.

In addition to Buddy's contractual liability, plaintiff bank informed Buddy on two occasions that Tiger was in default. Although the president of plaintiff bank testified that the bank usually notifies debtors when they are in default, there is nothing in the record indicating plaintiff notified Tiger prior to the time Buddy repossessed the car. So it is apparent plaintiff was looking to Buddy for protection and satisfaction. Therefore, it is not unreasonable to assume that Buddy would take some affirmative action to protect themselves such as acquiring possession of the mortgaged chattel. Also, since payment of the note and repurchase of the contract was guaranteed by Buddy, their action in taking possession of the car and placing it on their used car lot for resale was to be expected. Plaintiff cannot in light of its conduct come before this court with the assertion that it did not give Buddy instructions to repossess the car or was not aware that it was repossessed. Plaintiff should have known of Buddy's actions and is estopped to deny knowledge of such actions. Redden v. Haley, Okl., 268 P.2d 270.

■■ When a dealer-transferor-assignor takes the collateral back into his possession, he does not occupy the position of a stranger to the title so as to be unable to pass title to a purchaser. It is of record that the dealer is the original owner and that he has sold the car in question and has made an assignment to the plaintiff. If the dealer subsequent to the original sale has the collateral in his possesion it is not unreasonable to assume that he has it rightfully, either because his assignment was made with recourse, as in the instant case, or as a bailee, custodian, agent or even as owner. The assignee also has protection as to the proceeds in the hands of the dealer under Section 9–306, and if the dealer wrongfully sells the car the assignee can come against the dealer, and the proceeds under proper circumstances. As we stated in the case of Bankers Investment Company v. Humphrey, Okl., 369 P.2d 608, "As between two innocent parties one of whom had the means to protect himself but did

not, the law favors the one who is not at fault. Where one of two innocent parties must suffer through the act or negligence of a third party, the loss should fall upon the one who by his conduct created the circumstances which enabled the third party to perpetrate the wrong or cause the loss."

· The judgment of the trial court is reversed with direction to enter judgment for the defendant.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON, and LAVENDER, JJ., concur.

McINERNEY, J., concur specially.

McINERNEY, Justice (concurring specially):

I concur in the views expressed in the majority opinion relating to the interpretation of the Uniform Commercial Code as the Code applies to the factual situation presented. It seems to me that the provisions of the Code discussed in the opinion satisfactorily dispose of the case without resort to discussion of the equitable principle of estoppel. Since the Uniform Commercial Code constitutes an entirely new approach to security transactions, the Code is plenary and exclusive, except where the legislature has clearly indicated otherwise. The discussion arguendo of equitable principles in possible derogation of the express provisions of the Code is not, in my opinion, necessary.

The security interest of the plaintiff Bank is extinguished by the return or repossession of the chattel for the reasons stated in the opinion. Any remedy available to the plaintiff Bank thereafter to recover a loss is, I think, limited to its right to seek relief against the dealer-assignor on the basis of the endorsement with recourse. In other words, Rachel Osborn should prevail because, for the reasons stated in the opinion in construing the pertinent provisions of the Code, there is no remedy available to the plaintiff Bank against Osborn. The necessary link, a perfected security interest entitling plaintiff

Bank to possession of the automobile, has been severed by the security interest being extinguished. As I view the circumstances presented in this case, it is the lack of a remedy available to plaintiff Bank under the Code rather than estoppel to assert a right against defendant Osborn that completely controls.