**ROSE ACRE FARMS, INC.,**
**Defendant-Appellant,**

v.

**DECATUR COUNTY FARM BUREAU**
**COOPERATIVE ASSOCIATION,**
**INC., Plaintiff-Appellee.**

No. 1–184A29.

Court of Appeals of Indiana,
First District.

Aug. 7, 1984.

Rehearing Denied Sept. 20, 1984.

Donald E. Knebel, M. Sue Michael, Barnes & Thornburg, Indianapolis, for defendant-appellant.

Gary L. Boring, Robert J. Arnold, Gary L. Boring & Associates, P.C., Fountaintown, W. Michael Wilke, Wickens, Wickens & Wilke, Greensburg, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Rose Acre Farms, Inc. (Rose Acre) appeals from a judgment against it for conversion of crops in a suit brought by Decatur County Farm Bureau Cooperative Association (Co-op), a creditor with a security interest in the crops. The trial court held Rose Acre liable for the remaining amount owed by its debtor to the Co-op, $46,146.80, plus costs and interest.

We reverse.

## STATEMENT OF THE FACTS

Daniel Ortman (Ortman) was a farmer in Decatur County in 1980. Prior to the 1981 planting season, Ortman was indebted to the Co-op in the amount of $150,000.00. Ortman approached the Co-op for assistance in providing him with fertilizer, chemicals, and fuel necessary to plant his 1981 crops. The items were sold to Ortman on account, with the balance to be paid at the end of the 1981 crop year. The Co-op agreed to extend credit to the Ortmans in exchange for the Ortmans' execution of a security agreement, signed by the parties on April 21st, 1981, which gave Co-op a

secured interest in "all grains stored or on hands [sic] for the year 1981". Attached to the agreement was a sheet which described the real estate in Decatur and Jennings Counties on which the secured crops were located. The Co-op perfected its security interest by filing a financing statement with the Recorder of Decatur County on April 21, 1981.

On June 8, 1981, the Co-op sent actual notice by certified mail of its secured interest in the Ortman crops to Rose Acre. The letter, which contained a copy of the financing statement, stated in relevant part:

"Gentlemen:

We have a security agreement with Daniel E. Ortman, R.R. # 5, Greensburg, Indiana, for all of his grain. (Copy attached)

We would appreciate it very much if you receive any grain from him that you make the checks out in both his name and the Decatur County Farm Bureau Co-op."

The notice was received on June 9th at Rose Acre's principal office in Seymour, Indiana by an employee, Sue Adams.

During October, November, and December of 1981, corn was sold to Rose Acre in Ortman's name. The payments totalled approximately $155,915.05. The corn was delivered to the North Vernon mill by Ortman's brother, and payment was not made in the form of a joint check issued to Ortman and the Co-op. Daniel Ortman himself never brought any corn to the North Vernon mill.

The Co-op was unaware of the sales; upon learning of them, it acted immediately to enforce its secured interest in the crops. Ortman's debt reached approximately $400,000.00 in 1981. The Co-op was unable to collect the entire amount from Ortman and Ortman ultimately filed bankruptcy. The Co-op then brought the instant action, alleging Rose Acre is liable in tort for conversion in the amount of the unpaid balance of Ortman's account, $46,146.80 plus costs and interest.

## ISSUE

Rose Acre raises two issues; inasmuch as we reverse the trial court's decision, we address only the first issue which is dispositive of this appeal—whether the trial court erred in finding that grain sold to Rose Acre in Ortman's name in 1981 was the same grain described in the April 21, 1981 security agreement between the Co-op and Ortman.

## DISCUSSION AND DECISION

■ Rose Acre challenges the trial court's finding of fact # 9 which states:

"The grain sold to Rose Acre was secured by the security agreement between Ortman and the Co-op, as the security agreement covered all of his 1981 crops."

Rose Acre contends that the trial court's finding is erroneous because the record contains neither facts nor reasonable inferences which show that the grain purchased by Rose Acre was covered by the security agreement. In reviewing fact findings of the trial court, we will disturb them only if the record discloses no facts or inferences therefrom which support those findings. *Indiana Industries, Inc. v. Wedge Products,* (1982) Ind.App., 430 N.E.2d 419.

■ A cause of action for conversion lies for the purchase of property in which a perfected security interest exists. *Anon, Inc. v. Farmers Production Credit Ass'n,* (1983) Ind.App., 446 N.E.2d 656: "In an action for conversion, it is necessary for the plaintiff to show that before or at the time of the conversion, he had title ... to the property in controversy, coupled with the right to immediate possession, and that the property had been wrongfully converted by the defendant to his own use." *Noble v. Moistner,* (1979) 180 Ind.App. 414, 417, 388 N.E.2d 620 (citation omitted). Obviously, then, the salient feature of a conversion action requires the plaintiff to positively demonstrate that the property purchased by the defendant was the property in which it had a security interest. *See Lettinga v. Agristor Credit Corporation,* (6th Cir.1982) 686 F.2d 442. In *Lettinga,* suit was brought for wrongful destruction of dairy cows in which plaintiff had an

unperfected purchase money security interest. Defendant Agristor's security interest covered cows owned by the farm corporation. Once the farm corporation was dissolved, Agristor removed the commingled herd and eventually all the cows were slaughtered. Lettinga sued for the value of the cows in which it had a security interest; however, the 6th Circuit determined that Lettinga did not sustain his burden of establishing that the particular cows in which he had a security interest were taken by Agristor. Only four cows were adequately identified by Lettinga. *Lettinga, supra,* at 448.

■ Under the Uniform Commercial Code (UCC), the collateral subject to the security interest must be reasonably identified. *Id.* In the instant case, the security agreement pertained to "all grains stored or on hands [sic] for the year 1981". An attached sheet to the agreement listed twenty-three parcels of land on which the crops were located. While the collateral here is adequately identified, *See* IND. CODE 26–1–9–110, there is simply no proof in the record from which one may reasonably conclude that the crops sold to Rose Acre during the October—December 1981 period were grown on one of the real estate parcels listed in the security agreement.

One of the witnesses, Lois McLaughlin, the credit manager for the Co-op, initially stated she had personal knowledge of the source of the grain purchased by Rose Acre; however, after questioning by Rose Acre's counsel and the trial judge, she admitted that she did not have such knowledge:

"COURT: I hate to keep working this over and over, you don't know that the grain that was bought by Rose Acre from Mr. Ortman was in fact Mr. Ortman's grain, do you? I suppose there's a possibility that could have been somebody else's grain that he might have taken down there?
A. I would not have any way of knowing, no."

(R. 255.)

Later in the proceeding, Wayne Johnson, the assistant general manager of the Co-op, stated that he was monitoring the Ortman grain. He described two specific occasions when he followed a truck bearing grain to Ortman's farm; otherwise, he too was unable to state which grounds were being harvested during October and November of 1981 and what corn crop was taken to Rose Acre and sold.

The testimony of Henry Conrad, the Rose Acre employee who received the grain at the North Vernon mill was similarly unhelpful. Conrad explained that the corn sold to Rose Acre was sold in Dan Ortman's name, but that Dan never brought any corn to the plant. Instead, his brother brought it. The following exchange addresses the subject of the identity of the corn:

"Q. Do you have any recollection yourself as to where any of that grain would've come from?
A. I wouldn't have any...."

(R. 302.)

Conrad conceded that the checks for payment for the unidentified corn were issued to Dan Ortman only.

Plaintiff's Exhibit 6 was photocopies of Rose Acre's records documenting the sale of unidentified corn by Ortman's brother. While these records indicate, among other things, the amount of corn brought in and the price paid for each sale, nowhere do they describe where or when the corn grew or from whence it was harvested. Further, the evidence does not exclude the possibility that the corn was grown on land not included in the 23 parcels listed on the security agreement.

The Co-op has failed to carry its burden of establishing that the particular crops in which it had a security interest were converted by Rose Acre. *Lettinga, supra,* at 448. It attempts to extract itself from the above conclusion by explaining that since the Co-op did not learn of the sale until after its occurrence and because corn is a fungible commodity, it would have been impossible for it to identify the corn that

had been commingled by Rose Acre. We find this contention irrelevant. Several possibilities exist as to the source of the unidentified grain: for instance, Ortman may be dealing in grain and may have purchased the corn elsewhere in the course of his business. Or, the grain could be from a previous year not covered by the security agreement. Similarly, there are unanswered questions concerning the brother's role in the venture. Although we do not speculate as to why Daniel Ortman, his brother, or their employees, the parties most likely to be able to identify the source of the corn, were neither called to testify nor deposed in this matter, we nevertheless are constrained to hold that the record is insufficient to satisfy the Co-op's burden of proof in the conversion action herein.

For the above reasons, this cause is reversed.

Judgment reversed.

ROBERTSON and RATLIFF, JJ., concur.