FIFTH THIRD BANK OF SOUTHEAST-
ERN INDIANA, Appellant–Plaintiff,

v.

BENTONVILLE FARM SUPPLY,
INC., Appellee–Defendant.

No. 24A01–9308–CV–261.

Court of Appeals of Indiana,
First District.

Feb. 24, 1994.

Rehearing Denied May 2, 1994.

Dominic F. Polizzotto, C. Daniel Motsinger, Ice Miller Donadio & Ryan, Indianapolis, for appellant-plaintiff.

Mark W. Coy, Boring & Coy, P.C., Fountaintown, for appellee-defendant.

NAJAM, Judge.

## STATEMENT OF THE CASE

Fifth Third Bank of Southeastern Indiana ("Bank") appeals from the entry of summary judgment for Bentonville Farm Supply, Inc. ("Farm Supply") in the Bank's action for conversion. The Bank held a security interest in the 1989 crops of its debtor, Michael Keller. When Keller delivered his crops to the Farm Supply, it applied the market value of the crops to Keller's open account. The Bank filed suit, and after considering cross-motions for summary judgment, the trial court granted summary judgment for the Farm Supply denying the Bank's conversion claim.

We reverse and remand.

## ISSUES

We restate the issues presented for review as follows:

1. Whether the Bank holds a properly perfected security interest in the crops.

2. Whether the Bank agreed to an accord and satisfaction of its security interest in the crops when it approved Keller's Chapter 12 reorganization plan.

3. Whether the Farm Supply is a "buyer in the ordinary course of business" which takes free and clear, absent written notice of a perfected security interest.

4. Whether the Bank is entitled to summary judgment on its claim for conversion.

## FACTS

In 1989, the Bank loaned Keller over $100,000.00 to plant crops on land which Keller farmed in Fayette County, Indiana. To secure repayment of the loans, the Bank required that Keller grant the Bank a security interest in his crops. Keller also signed a financing statement which the Bank filed in the Fayette County Recorder's Office. The Bank sent the Farm Supply a written notice that it held a security interest in Keller's "crops and soybeans."

Keller ultimately delivered approximately seventy-five percent of his 1989 crops to the Farm Supply which then credited the market value of the crops to his account. When the Bank failed to receive a check from the Farm Supply for the crops, the Bank filed suit alleging that the Farm Supply had converted Keller's crops in violation of the Bank's perfected security interest.[1] The Farm Supply admitted receiving notice of the Bank's lien but contended that the notice was ineffective because it did not specify to which crops the lien applied. We will state additional facts where needed.

## DISCUSSION AND DECISION

### Standard of Review

■ On appeal from the grant of a summary judgment, we apply the same standard as the trial court. *Babcock v. Lafayette Home Hospital, Woman's Clinic* (1992), Ind. App., 587 N.E.2d 1320, 1323. Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind.Trial Rule 56(C). The party moving for summary judgment must make a prima facie showing that no genuine issue of fact exists, and any doubts must be resolved in favor of the nonmoving party. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190. Once the moving party meets his burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Id.;* Ind.Trial Rule 56(E).

■ Cross motions for summary judgment on the same issues do not alter the standard for granting summary judgment; rather, when reviewing cross motions, our inquiry remains whether a genuine issue of material fact exists which requires a trial on the merits. *See State Board of Tax Commissioners v. New Energy Co.* (1992), Ind.App., 585 N.E.2d 38, 39, *trans. denied; Skaggs v. Merchants Retail Credit Association, Inc.* (1988), Ind.App., 519 N.E.2d 202, 203. The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *United Farm Bureau Mutual Insurance Co. v. Schult* (1992), Ind.App., 602 N.E.2d 173, 174.

### Issue One: Perfection

■ We first address and reject the Farm Supply's contention that the Bank did not perfect its security interest in Keller's crops. The Farm Supply mistakenly relies upon the contents of the Bank's written notice of its security interest under Indiana Code § 26-1-9-307 instead of the Bank's financing statement. *See* Record at 161 and 285. Sections 9-401 and 9-402, not Section 9-307, govern the perfection of security interests in farm products. When the collateral is crops which are growing or are to be grown, the secured party must file a financing statement in the office of the county recorder in the county where the land is located. IND.CODE § 26-1-9-401(1)(a). A financing statement sufficient to perfect a security interest in crops must: (1) contain the names of the debtor and secured party; (2) be signed by the debtor; (3) give a mailing address for both the secured party and the debtor; (4) contain a statement indicating the types, or describing the items, of collateral; and (5) contain a description of the real estate concerned. IND.CODE § 26-1-9-402(1).

The Bank filed a financing statement on May 2, 1989, with the Recorder of Fayette County, the county in which Keller's crops were to be grown. Record at 285. The

1. The Bank filed suit on the grounds that Indiana Code § 26-1-9-307(1)(c) requires the purchaser of farm products to issue a check for payment jointly to the debtor/farmer and any secured party which has notified the purchaser of its security interest in the farm products.

financing statement complied with the requirements of Section 9–402(1) in every respect, including the requirement that it contain a description of the real estate where the crops were planted. Thus, the Bank perfected its security interest in Keller's 1989 crops.

■ The Farm Supply proffers an alternative argument that even if the Bank had perfected its security interest in Keller's crops, the crops lost their identity as crops when they were harvested and became grain. Thus, the Farm Supply reasons that the Bank did not hold a perfected security interest in the grain, a product of the crops. This argument is without merit. The Bank did perfect a security interest in the products of Keller's crops by checking the box marked "Products of Collateral are also covered" on its UCC–1 financing statement. *See* Record at 285.

The adequacy of a financing statement is a question of law. *See Citizens National Bank of Evansville v. Wedel* (1986), Ind.App., 489 N.E.2d 1203, 1208. We conclude, as a matter of law, that the Bank held a perfected security interest in Keller's crops and the products derived therefrom.

### Issue Two: Accord and Satisfaction

After the disputed transfer of Keller's crops to the Farm Supply occurred, Keller filed a Chapter 12 bankruptcy petition, and the Bank approved Keller's plan of reorganization. The Farm Supply contends that the Bank and Keller reached an accord and satisfaction when the Bank approved Keller's plan, effectively discharging the Bank's security interest in Keller's crops and thus relieving the Farm Supply of liability for conversion. The Farm Supply vaguely asserts that although it was not a party to the bankruptcy proceeding, "the accord and satisfaction transcended the confines of bankruptcy." Brief of Appellee at 16.

■ An accord and satisfaction is a contract between the parties in performance of terms other than those terms originally agreed upon and in satisfaction of the parties' original obligations. *Gearhart v. Baker* (1979), Ind.App., 393 N.E.2d 258, 260. As a contract, accord and satisfaction requires a meeting of the minds or evidence that the

parties intended to agree to an accord and satisfaction. *See Erie Co. v. Callahan Co.* (1933), 204 Ind. 580, 585, 184 N.E. 264, 266; *Kucel v. Walter E. Heller & Co.* (1987), 5th Cir., 813 F.2d 67, 70. However, a bankruptcy plan of reorganization "arises by operation of federal bankruptcy law, not by contractual consent of the creditors." *See Union Carbide Corp. v. Newboles* (1982), 7th Cir., 686 F.2d 593, 595 (rejecting defense by guarantors of bankrupt debtor that creditor's approval of plan constituted accord and satisfaction). "A creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings. . . ." *Id.* Further, "the federal bankruptcy laws, no matter how suggestive, do not operate as a private contract. . . ." *Id.*

■ As the party asserting the defense of accord and satisfaction, the Farm Supply bears the burden of proof. *See Schmalhausen Siebert Chevrolet Oldsmobile, Inc. v. Bass* (1990), Ind.App., 554 N.E.2d 1180, 1183, *trans. denied.* The question of whether an accord and satisfaction has been reached is ordinarily a question of fact except when the controlling facts are undisputed, in which case it is a question of law. *Id.* Here, the controlling fact which is undisputed is that Keller's bankruptcy reorganization plan is not a contract between Keller and the Bank and cannot constitute an accord and satisfaction. *See Union Carbide*, 686 F.2d at 595. The Farm Supply cannot carry its burden on this defense. Therefore, we conclude, as a matter of law, that the Bank's security interest in Keller's crops was not extinguished by an accord and satisfaction.

### Issue Three: Buyer in the Ordinary Course of Business

The Bank and the Farm Supply devote considerable attention to the application and interpretation of Indiana Code § 26–1–9–307, which provides in pertinent part:

"(1) A buyer in [the] ordinary course of business (IC 26–1–1–201(9)) takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence. The following apply whenever a

person is buying farm products from a person engaged in farming operations who has created a security interest on the farm products:

> (a) A person buying farm products from a person engaged in farming operations is not protected by this subsection if he has received prior written notice of the security interest. *"Written notice" means an original financing statement or a carbon, photographic, or other reproduction of an original that is effective under IC 26–1–9–402, or a notice on a form prescribed by the secretary of state...."* (emphasis added).

According to the Farm Supply, the Bank's notice of its lien was insufficient under Indiana Code § 26–1–9–307(1)(a). Thus, the Farm Supply claims that it took the crops free of the Bank's security interest and that it cannot be liable for conversion of Keller's crops.

■ In order to take Keller's crops free of the Bank's perfected security interest, the Farm Supply had to be a "buyer in the ordinary course of business." *See* IND. CODE § 26–1–9–307(1). A buyer in the ordinary course of business is defined as:

> "a person who in good faith and without prior knowledge that *the sale* to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker.... *'Buying'* may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale *but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt."*

IND.CODE § 26–1–1–201(9) (emphases added). As the definition shows, "buying" requires a sale and does not include a transfer in total or partial satisfaction of a money debt.

Both the Bank and the Farm Supply ignore this definition. Indeed, the parties both assume that the Farm Supply is a buyer in the ordinary course and focus on whether the Bank's written notice of its lien to the Farm Supply complied with Indiana Code § 26–1–9–307(1)(a). In our analysis we must first determine whether the Farm Supply is a buyer in the ordinary course of business.

Our courts have not previously considered whether a farm supply company which receives farm products and applies the value of the products to the farmer's account is "buying" those products and qualifies as a "buyer in the ordinary course of business." However, courts in other jurisdictions have interpreted Section 1–201(9) and held that a farm supply company under these circumstances is not a buyer in the ordinary course of business. For example, in *Farmers State Bank v. Easton Farmers Elevator* (1990), Minn. App., 457 N.W.2d 763, *review denied,* the bank held a perfected security interest in the farmer's crops, its products and proceeds. *Id.* at 764. The farmer, who purchased feed from the grain elevator company, sold his crops to the grain elevator company, and the grain elevator applied the proceeds to the farmer's outstanding feed bill. *Id.* The Minnesota Court of Appeals, citing Section 1–201(9), noted that " 'buying' does not include a transfer in partial or total satisfaction of a money debt" and concluded that the grain elevator company was not protected as a buyer in the ordinary course of business "to the extent that it credited the [farmer's] antecedent feed debt." *Id.* at 765.

The Iowa Supreme Court has also considered whether a grain elevator company which accepted a farmer's crops, exchanged a portion of the crops for cash and applied a portion of the proceeds of those crops toward the farmer's debt with the company was a buyer in the ordinary course of business. *See First State Bank v. Shirley Ag Service, Inc.* (1987), Iowa, 417 N.W.2d 448, 454. The court held the grain elevator company's status as a buyer in the ordinary course of business only extended to the transfer of crops for cash but did not extend to those crops which were retained in satisfaction of the farmer's antecedent debt. *Id.* at 456.

Similarly, in *United States v. Greenwich Mill & Elevator Co.* (1968), N.D. Ohio, 291 F.Supp. 609, a farm supply company sold a

farmer supplies to enable him to continue farming. *Id.* at 611. The farm supply company subsequently harvested and took possession of crops then growing in the farmer's fields in which the United States, through the Farmers Home Administration, held a perfected security interest. The FmHA sued the farm supply company for conversion, and the farm supply company defended on the ground that it had a right to set-off the value of the harvested crops against the amount the farmer owed it for supplies. *Id.* at 611–12. The court rejected that defense, reasoning that the farm supply company was not a buyer in the ordinary course under Section 1–201(9) and 9–307 because it took the crops to satisfy the farmer's existing debt. *Id.* at 613.

■ The underlying principle from the foregoing decisions is that to attain the status of a "buyer in the ordinary course of business" under Section 1–201(9), the purchaser must give "new value" in exchange for the secured party's collateral. *See Shirley Ag Service,* 417 N.W.2d at 455; *Farmers Livestock Exchange v. Ulmer* (1986), N.D., 393 N.W.2d 65, 70 ("definition makes clear that buying in the ordinary course of business requires 'new value' to be given"); *Shacket v. Roger Smith Aircraft Sales, Inc.* (1980), N.D.Ill., 497 F.Supp. 1262, 1269 n. 9, *reversed on other, federal law grounds, Philko Aviation, Inc. v. Shacket* (1983), 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (provision that "buying does not include a transfer in total or partial satisfaction of money debt" literally applies where no new consideration, no fresh money, is advanced by buyer); *see also* White & Summers, *Uniform Commercial Code* § 25–13, at 1067 (2d ed. 1980). Simply put, a party claiming the protection of Indiana Code § 26–1–9–307(1)(a) as a buyer in the ordinary course of business must actually purchase something. *See United Leaseshares, Inc. v. Citizens Bank & Trust Co.* (1984), Ind.App., 470 N.E.2d 1383, 1388.

■ Here, the undisputed designated evidentiary material reveals that Keller maintained an open account with the Farm Supply for provision of seed, fertilizer, chemicals and other necessary farm supplies. Record at 226. Keller described his account with the Farm Supply in the fall of 1989, as "relatively large." Record at 230. Keller delivered a portion of his crops to the Farm Supply at that time and told the Farm Supply that "what we needed to do was reduce this bill." Record at 231–32. Keller stated that other than using his crops to reduce the large account balance, he was not concerned with how the Farm Supply disposed of the crops. Record at 231–32. When questioned whether he considered the crops still to be his property after delivering them to the Farm Supply, Keller explained that "he never really thought of it in [those] terms." Record at 232. Keller admitted that the amount he owed on account to the Farm Supply decreased after he delivered his 1989 crops and that he never received any money from the Farm Supply for the crops. Record at 234–35.

Robert Miller, then owner of the Farm Supply, corroborated Keller's deposition testimony. Miller acknowledged that the Farm Supply's account records for Keller contained an entry for November 24, 1989, which stated "sell corn, apply to account." Record at 200–02. Miller explained the term "apply to account" in this entry meant that the market value of Keller's crops was offset against the balance due on Keller's account with the Farm Supply. Record at 202–03. Miller stated that the Farm Supply did not issue Keller a check for his crops because the Farm Supply's account records indicated "apply to account."

The crux of Section 1–201(9) is the term "buying," and if the alleged "buyer in the ordinary course" does not *buy* goods, a discussion of the additional requirements, such as good faith, is superfluous. *In re Skinner Lumber Co.* (1983), D.S.C., 37 B.R. 250, 252. There is no question that Keller delivered his crops to the Farm Supply with the expectation that those crops would be credited to his open account at the Farm Supply in partial or total satisfaction of the debt he owed. The undisputed evidence discloses that, in fact, the Farm Supply set-off the market value of Keller's crops against his account balance and never issued Keller a check. The Farm Supply could not be a "buyer in the ordinary course of business" because it

did not give any new value for Keller's crops but took the crops in partial satisfaction of Keller's account debt.

■ The burden of proving that a purchaser is a buyer in the ordinary course of business lies with the party claiming such status, and the Farm Supply cannot meet its burden. *See In the Matter of Gary Aircraft Corp.* (1982), 5th Cir., 681 F.2d 365, 373, *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1366 (applying Texas law). We hold, as a matter of law, that the Farm Supply was not a "buyer in the ordinary course of business" under Section 1–201(9) when it acquired possession of Keller's crops. Even though the Bank purported to supply the Farm Supply with written notice of its security interest under Section 9–307(1)(a), such notice was inconsequential because the Farm Supply was not a buyer in the ordinary course. The Farm Supply was an unsecured creditor of Keller. Accordingly, the Farm Supply took Keller's crops subject to the Bank's perfected security interest.

### Issue Four: Conversion

■ A secured creditor has a cause of action for conversion against a third party buyer of property in which it holds a perfected security interest. *See Anon, Inc. v. Farmers Production Credit Association* (1983), Ind.App., 446 N.E.2d 656, 659. However, to sustain a conversion action, the plaintiff must positively demonstrate that the property purchased by the defendant was the property in which it held a security interest. *Rose Acre Farms, Inc. v. Decatur County Farm Bureau Cooperative Association, Inc.* (1984), Ind.App., 467 N.E.2d 26, 28, *trans. denied.* The Farm Supply maintains that on the facts of this case, the Bank cannot meet its burden of proving the Farm Supply converted the particular crops in which the Bank held a security interest. Thus, the Farm Supply reasons that, as a matter of law, the trial court properly entered summary judgment in its favor. We disagree.

In support of its conversion claim, the Bank relies upon Keller's deposition testimony in which he stated that he delivered approximately seventy-five percent of his 1989 crops to the Farm Supply. Record at 236–

37. Keller testified that he keeps records of the amount of crops he harvests each year and that he had records for his 1989 crops. Record at 235–36. Keller explained that his records and the Farm Supply's records of the amount of crops he delivered should not vary by more than fifteen or twenty pounds. Record at 236.

Keller admitted that he granted the Bank a security interest in his crops. Record at 249. The Bank perfected its security interest by filing a financing statement on May 2, 1989, which applied to "all crops, including, but not limited to corn and soybeans grown in Fayette and Wayne Counties, Indiana [and] also any stored grain and the contract right to the grain." Record at 285. Thus, the Bank has made a prima facie case for conversion by demonstrating that it held a perfected security interest in all of Keller's crops grown in 1989 and by designating Keller's deposition testimony that he delivered seventy-five percent of his 1989 crops to the Farm Supply.

In response, the Farm Supply contends that it is entitled to summary judgment on the Bank's conversion claim based on Keller's testimony that he typically took his corn to the Farm Supply for storage purposes and that he also had his own storage facilities for grain. Record at 251–52. The Farm Supply reasons that "in all likelihood he [Keller] transferred and moved grain from his farm to the Farm Supply that was not subject to the Bank's purported security interest." Brief of Appellee at 13. However, Keller's testimony is not only insufficient to entitle the Farm Supply to summary judgment but it is also insufficient to create a genuine issue of material fact on the conversion claim.

The Bank's financing statement conclusively establishes its status as a secured creditor with respect to both Keller's crops and his stored grain. The financing statement provides that the Bank held a perfected security interest in "all crops, including, *but not limited to* corns and soybeans grown in Fayette and Wayne Counties ... [and] also *any stored grain and the contract right to the grain.*" (emphases added). Thus, even if we accept the Farm Supply's assertion that Kel-

ler transferred and moved grain that he stored other than his 1989 grain, Keller's stored grain was also covered by the Bank's security agreement.

The Farm Supply relies on our decision in *Rose Acre Farms*, but that case is easily distinguishable from the case presently before us. In *Rose Acre Farms*, we observed that neither the debtor/farmer nor any of his employees, those parties most likely to be able to identify the source of the grain, were either deposed or called to testify that they actually delivered grain subject to the secured party's security interest. *Rose Acre Farms*, 467 N.E.2d at 29. Of those witnesses who testified, none were able to identify the source of the grain purchased. *Id.* at 28. Further, the security agreement stated that the secured party's lien applied to "all grains stored or on hands [sic] for the year 1981." *Id.* We noted that the disputed grain could have been grain stored from a previous year which was not covered by the security agreement. *Id.* at 29.

■ Here, the Bank's financing statement, while filed in 1989, does not limit the Bank's security interest to crops grown or grain stored in 1989. Rather, the Bank held a security interest in "all crops" grown on the parcels described in the financing statement and "any stored grain" of Keller, without limitation as to its location or the year stored. Keller himself testified that he delivered approximately seventy-five percent of his 1989 crops to the Farm Supply.

The Bank met its initial burden of showing that no genuine issue of fact exists and that it is entitled to judgment as a matter of law on its conversion claim against the Farm Supply. The Farm Supply, however, failed to designate evidence which demonstrates a genuine issue of fact and which precludes summary judgment. We conclude that the Bank is entitled to summary judgment as a matter of law on the issue of the Farm Supply's liability for conversion.

## CONCLUSION

We hold that the Bank has a perfected security interest in Keller's 1989 crops. There was also no accord and satisfaction when the Bank approved Keller's bankruptcy reorganization plan. Notwithstanding notice of the Bank's security interest, the Farm Supply is not a buyer in the ordinary course of business because when Keller delivered the crops to the Farm Supply, the Farm Supply applied the market value of those crops to Keller's open account. Thus, the Farm Supply does not take Keller's crops free of the Bank's security interest.

We further hold that no genuine issue of material fact remains for resolution by the trier of fact concerning the Farm Supply's liability to the Bank for conversion of Keller's crops. The Bank met its burden of establishing that it held a perfected security interest in the grain Keller delivered to the Farm Supply. The trial court is hereby directed to enter partial summary judgment for the Bank on the Farm Supply's liability for conversion and to set this matter for a trial on the Bank's damages.

We reverse and remand for a trial on damages and for other proceedings consistent with this opinion.

BAKER and MILLER, JJ., concur.