The DON WEBSTER COMPANY,
INC., Plaintiff,

v.

INDIANA WESTERN EXPRESS,
INC., Defendant.

No. IP99–1611–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 1, 2002.

James A. Dressman III, Deters Benzinger & Lavelle, Covington, KY, Brett R. Fleitz, Kroger Gardis & Regas, Indianapolis, IN, for Plaintiff.

Robert L Browning, Scopelitis Garvin Light & Hanson, Indianapolis, IN, for Defendant.

**ORDER DENYING PLAINTIFF'S SUP-
PLEMENTAL MOTION FOR PAR-
TIAL SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUM-
MARY JUDGMENT**

BARKER, District Judge.

Plaintiff, The Don Webster Company, Inc. ("Webster"), sues Defendant, Indiana Western Express, Inc. ("IWX") for breach of contract. Defendant asserts the affirmative defense of accord and satisfaction. On August 24, 2001, the Court denied cross motions for summary judgment on this issue. *The Don Webster Co., Inc. v. Indiana Western Express, Inc.*, 161 F.Supp.2d 959 (S.D.Ind.2001). Webster asks us to re-examine accord and satisfaction in its Supplemental Motion for Partial Summary Judgment. For the reasons set forth below, Plaintiff's motion is *DENIED*.

In its Amended Complaint, Webster adds a cause of action in fraud and demands punitive damages. Defendant filed a Motion for Partial Summary Judgment on the issues of fraud and punitive dam-

ages. For the reasons set forth below, Defendant's motion is *GRANTED*.

## Background Facts [1]

Webster, a corporation owned by Don Webster and Kimberly Webster, sells the transportation services of trucking companies to various shippers. Webster and IWX began doing business with each other more than six years ago. On April 5, 1995, they entered into a Commission Sales Agent Agreement ("Commission Agreement") establishing that Webster would sell IWX's trucking services to third parties on a commission basis. The Commission Agreement states that the commission will be $50.00 per load on winter loads and $100.00 per load on summer loads and defines the terms "winter" and "summer" for purposes of the contract.

After a brief period of success in their business relationship, the situation between Webster and IWX began to sour in September of 1997 when Webster started receiving $25.00 per load on certain loads, rather than the amounts established by the Commission Agreement. As will be examined in the discussion below on the fraud claim, Webster maintains that this rate cut was part of a scheme to end the contract, a scheme that included other actions by IWX such as misrepresentation of IWX's ongoing business relationships with Webster's customers and the removal of Webster's payment code from the Dole produce account so that Webster could not discern whether IWX continued shipping for Dole. Eventually, on September 3, 1999, the parties terminated the contract.

As explained in our earlier ruling, the parties dispute a number of facts leading up to the termination of the contract, including whether they engaged in certain conversations and what they discussed, if indeed the conversations actually took place. A relevant example concerns a September 1997 conversation, about which Don Webster testified in his deposition, between himself and Steve Coulter, President and majority shareholder of IWX. According to Don Webster, at this meeting Coulter instituted a retroactive rate cut on the Kroger grocery store account to $25.00 per load. At his deposition, when asked repeatedly when he had conversations with Webster about rate cuts, Coulter did not mention this meeting in September of 1997. In any event, following the meeting, Webster received a settlement check and settlement sheet indicating that he was paid $25.00 per load for loads shipped for Kroger. The total amount of the check was $2,3750.00. Following this meeting, and until January 1, 1999, Webster was paid at this $25 rate for all Kroger loads and for certain loads for other customers such as Fresh America, Wal–Mart, and Dole. Webster sues for payment at the Commission Agreement rates of $50.00 or $100.00 per load for these loads.

## Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The moving party may meet its burden of demonstrating the absence of a triable issue by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing a well-supported summary judgment motion may not simply rest on the pleadings, but must respond affirmatively with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a

---

1. Only the facts relevant to these motions are included here. A fuller rendition of the parties' business dealings and eventual dispute is set forth in *Webster,* 161 F.Supp.2d at 961–64.

motion for summary judgment, courts must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shank v. William R. Hague, Inc.,* 192 F.3d 675, 681 (7th Cir.1999). Nonetheless, the "mere scintilla of evidence in support of the plaintiff's [or the defendant's] position will be insufficient" to avoid summary judgment. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505.

### Defense of Accord and Satisfaction

As noted earlier, we ruled on the defense of accord and satisfaction in our prior entry. *Webster,* 161 F.Supp.2d at 964–69. We determined that IWX had created a genuine issue of material fact as to whether IWX tendered checks to Webster with the intent that acceptance signify agreement that the checks constitute payment in full, as required by Indiana principles of accord and satisfaction. *Id.* at 967; *see also Rauch v. Shots,* 533 N.E.2d 193, 194–95 (Ind.Ct.App.1989) (absent express condition, courts look to the intent of both parties in offering and accepting the checks to determine if there has been accord and satisfaction). IWX created a genuine issue of material fact through the introduction of the affidavit of Norman Bodine, the comptroller at IWX. *Webster,* 161 F.Supp.2d at 968. Bodine averred that one of his duties was to issue weekly settlement checks to commission sales agents such as Webster. Bodine Aff. ¶ 3. He further stated that "[t]he words 'Agent Settlement' on Webster's checks and the accompanying settlement sheets were intended by IWX to make known to Webster

that the checks were tendered in full satisfaction of the amounts due and owing for the respective loads." *Id.* at ¶ 6. Balancing the difficulty of proving intent with the suspicion reserved for self-serving affidavits, we concluded that Bodine's affidavit barely cleared the hurdle of establishing more than a "mere scintilla" of evidence in support of IWX's position. *Webster,* 161 F.Supp.2d at 968 (citing *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Manufacturing Co.,* 134 F.3d 878, 887 (7th Cir.1998); and *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505).

Following our prior ruling, Webster deposed Bodine. Bodine's deposition testimony forms the basis of Webster's motion.[2] At the deposition, Webster questioned Bodine about his prior affidavit testimony concerning IWX's intent that the settlement sheets and checks were tendered in full satisfaction for various loads. When asked what he meant by "in full satisfaction," Bodine responded, consistent with his affidavit testimony, "That whatever he was paid, that that's—or anybody for any invoice is what I mean, that that satisfies the obligation." Bodine Dep. at 57, lines 13–16. When asked what would happen if there was a mistake on the settlement sheets (or "invoice"), Bodine responded that an agent has "every opportunity to explain or to say that something's wrong." *Id.* at 57, lines 20–24. Bodine also testified that "what [he] had in mind" about the settlement sheet was that "it's being offered in full satisfaction but the agent would still have an opportunity to make corrections." *Id.* at 58, lines 12–20.

2. An order denying summary judgment can be reviewed following the presentation of additional evidence. *Curran v. Kwon,* 153 F.3d 481, 487 (7th Cir.1998) (examining new discovery material as basis for granting summary judgment despite opposing party's argument based on law of the case doctrine when

court had denied prior summary judgment motion concerning same issue). However, in the interest of efficiency, we take this opportunity to request that parties file summary judgment motions after they believe they have collected all discovery relevant to the motions.

Clearly, the suspicion with which we regarded Bodine's affidavit in our earlier summary judgment motion was appropriate. However, granting summary judgment to Webster on the defense of accord and satisfaction is not warranted. The inconsistencies in Bodine's deposition and affidavit testimony might indicate that he was lying in the affidavit. Or, the inconsistencies could demonstrate that Bodine, on behalf of IWX, had the requisite intent to be bound by the arrangement allegedly represented in the settlement checks, but that Bodine has a generally fluid approach to any given matter that prevents him from holding strongly to any particular intention, including the one at issue here. Such assessments of credibility and character are particularly the bailiwick of the jury. Hence, there is a general reluctance reflected in Indiana case law to grant summary judgment on accord and satisfaction, a defense in which the intent of both parties is a key element. *See, e.g., Rauch,* 533 N.E.2d at 194 ("The issue of accord and satisfaction is ordinarily a question of fact and becomes a question of law only if the requisite controlling facts are undisputed and clear."); *Tabani v. Hester,* 174 Ind.App. 56, 366 N.E.2d 193, 195 (1977) ("If, as here, the intent of the parties is in dispute or is ambiguous the question is to be presented to the trier of fact for its determination."). For this reason, IWX again survives Webster's renewed motion for summary judgment.[3]

---

**3.** Recognizing the problems with Bodine's deposition testimony, IWX, in its response brief, posits another theory. IWX argues that the $2,375.00 settlement check tendered to and cashed by Webster after Don Webster and Coulter met in September 1997 to discuss and resolve their dispute regarding amounts owed to Webster constitutes accord and satisfaction. Defendant's Resp. at 2. Specifically, IWX contends that Coulter, after meeting with Webster, had the requisite intent regarding the issuance of the settlement check. *Id.* at 5. Because our ruling concerning Bodine's testimony salvages this defense for IWX, we address this argument only briefly. It raises many of the same credibility issues present in the interpretation of Bodine's testimony. Coulter claims in an affidavit that after his September 1997 meeting with Webster, he issued the settlement check and settlement sheet with the intent that it satisfy all outstanding obligations to Webster. Coulter Aff. ¶ 3. Interestingly, in his earlier deposition testimony, Coulter testified that he never met with Webster anytime after the open house in 1996. Coulter Dep. at 74–75. Nonetheless, Webster testifies that the September 1997 meeting did take place. Sorting through the various accounts of the dealings between Webster and Coulter is a project for the jury.

We also note that accord and satisfaction discharges *existing* duties. *Accord and Satisfaction,* 1 Am.Jur.2d § 1 (emphasis added); *see also Fitzgerald v. Smith,* 1 Ind. 310, 1 Cart. 310, 1848 WL 4186 (1848) ("An agreement to accept a collateral thing in satisfaction of a *pre-existing* debt, is executed by delivery ... and is a good accord and satisfaction.") (emphasis added); *Professional Therapy Services, Inc. v. Signature Corp.,* 223 Ill.App.3d 902, 166 Ill.Dec. 269, 585 N.E.2d 1291, 1300 (1992) ("An accord is an agreement or settlement of an *existing* dispute ... which presupposes a disagreement as to the amount due.") (emphasis added). Hence, accord and satisfaction based on the $2,375.00 settlement check would not constitute a defense for the disputed amounts on accounts shipped after September 1997. Defendant cannot extend the effect of this settlement check beyond September 1997 by pointing to *Armour & Co. v. Anderson,* 114 Ind.App. 485, 51 N.E.2d 496 (1943). In that case, the defendant presented evidence that the parties had reached a new agreement in 1932 concerning the price per pound of butterfat, leading the court to conclude that "the facts of the instant case clearly show an executed accord and satisfaction amounting to a novation." *Armour,* 51 N.E.2d at 497. In contrast, as included in the discussion of release in our earlier opinion, any agreement (on certain loads) other than the Commission Agreement reached between the parties was not sufficiently definite in its terms to constitute a valid and enforceable contract altering the terms of the Commission Agreement. *Webster,* 161 F.Supp.2d at 970.

## Fraud Action and Demand for Punitive Damages

When first filed on October 19, 1999, this case was a suit for breach of contract. One year later, Webster amended his complaint in order to assert an additional cause of action, which we permitted on April 9, 2001. Count Three of the amended complaint alleges that IWX made false representations upon which Plaintiff relied and thereby suffered damages in fraud. Based on this alleged injury, Webster sues for punitive damages. IWX seeks partial summary judgment on the issues of fraud and punitive damages. Because Plaintiff cannot establish an applicable exception to recent developments in Indiana case law on the relationship between breach of contract, on the one hand, and fraud and punitive damages, on the other hand, partial summary judgment is warranted.

In Indiana, it is clear that "punitive damages are not allowed in a breach of contract action." *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 981 (Ind.1993). It is only "where the conduct of the breaching party independently establishes the elements of a common law tort, and where the proven tort is of the kind for which punitive damages are allowed, [that] punitive damages may be awarded." *Id.* (citation omitted). Hence, the question is whether Webster has established the existence of an inde-

pendent tort, namely fraud. *See Puller Mortgage Associates, Inc. v. Keegan*, 829 F.Supp. 1507, 1519 (S.D.Ind.1993) (recognizing fraud as type of tort permitting award of punitive damages).

In support of the position that the facts of this case create an independent tort action, Webster argues that IWX made a number of misrepresentations during the course of their business dealings.[4] First, according to Plaintiff, IWX made a "unilateral decision to cut Webster's commission rates ... [and] never conveyed [this information] to Webster." Plaintiff's Resp. at 6. Coulter sent a memo, dated August 26, 1997, to Mitchell. Ex. A, attached to Plaintiff's Resp. The memo sets commission rates for loads that generally are lower than those set forth in the April 1995 Commission Agreement. *Id.* Webster maintains that this decision to cut his rates was never conveyed to him. Fourth Webster Affidavit, ¶¶ 10–12.[5] Second, Webster maintains that IWX misrepresented its ongoing business relationships with Webster's customers. Plaintiff's Resp. at 2. Webster claims that, in May of 1999, Coulter told Don Webster that IWX was no longer shipping for Dole, when in fact, IWX continued hauling for Dole. Coulter Dep. at 116. At the same time, Webster's payment code was removed from the Dole account so that Webster was not paid a commission for any loads IWX shipped for

---

**4.** Alleged misrepresentations are the foundation of a fraud action. *See Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind.Ct.App.2000) ("[T]he five elements of actual fraud [are]: (1) a false statement of past or existing material fact (2) made with knowledge it was false or made recklessly without knowledge of its truth or falsity (3) made for the purpose of inducing the other party to act upon it (4) and upon which the other party did justifiably rely and act (5) proximately resulting in an injury to the other party.").

**5.** Even viewing all evidence in the light most favorable to Webster, as we must for purposes

of this summary judgment motion, this statement is only partially true. Don Webster does not dispute that he received settlement sheets with almost every check from which he could discern the amount he was paid for each load. Webster Dep. at 142–43. He does maintain, however, that at the time Coulter sent the memo to Mitchell (August 26, 1997), Webster did not know of Coulter's alleged intent to pay lower rates than those established in the Commission Agreement for future loads, including the Dole loads, which did not begin until February 26, 1998. Fourth Webster Aff., ¶ 12.

Dole. *Id.* According to Plaintiff, there was a similar situation with regard to loads for Kroger and Wal Mart, such that IWX falsely represented to Webster that IWX was no longer shipping for these companies and Webster was not paid a commission. Plaintiff's Facts, ¶¶ 47–48, 50–51. Third, Webster alleges that Coulter instructed Webster not to contact Dole and misrepresented the reason for this arrangement. *Id.* at ¶ 43. Coulter purportedly told Don Webster that Dole was dissatisfied with Webster, which was not true. *Id.* Finally, Webster argues that these misrepresentations were part of "a documented scheme, engineered by IWX's owner and unknown to Webster, to induce Webster to abandon its contract with IWX, but only after IWX obtained major customers from Webster's solicitation efforts." Plaintiff's Resp. at 2. This pattern of behavior and misrepresentations forms the basis of Plaintiff's fraud claim.

■ As a matter of law, such allegations do not rise to the level of a fraud action independent of the alleged breach of contract. In *Epperly*, the defendant, Harrison Epperly, told the plaintiff, Fred Johnson, that some of their partners in the purchase and management of one golf course were "concerned" about Johnson's involvement in the planned purchase of another golf course. 734 N.E.2d at 1072. On the basis of this concern, Epperly asked Johnson to exit from the purchase of the second golf course and assured Johnson that Epperly would see to it that Johnson became a partner after the closing. *Id.* As events unfolded, the other partners had no such concern, and Epperly did not convey an interest in the golf course to Johnson as required in their oral contract.

*Id.* The Indiana Court of Appeals rejected Johnson's fraud claim, reasoning that "because Epperly's misrepresentation was merely a breach of the parties' oral contract," there was no independent fraud action. *Id.* at 1073.

Plaintiff attempts to distinguish *Epperly*, but is unsuccessful. In *Epperly*, the defendant *gave a false reason* for breaching the contract, which the court found did not convert the breach into a fraud. *Id.* Specifically, the court reasoned that giving a false reason for breach does not result in damage independent of the breach itself. *Id.* Plaintiff contrasts the situation in *Epperly* with the facts here, noting that IWX misrepresented the *existence* of a breach, rather than only the reason for a breach about which the other party already was aware. Plaintiff's Resp. at 10. Webster contends that this distinction is significant because Webster continued to incur expenses to bring new customers to IWX in reliance on the ongoing contractual relations between Webster and IWX, which IWX had decided to abandon unbeknownst to Webster. *Id.* Under the Commission Agreement, Webster cannot recover these expenses.[6] Webster argues that the inability to recover these expenses constitutes a tort injury independent of the contract. *Id.* According to Don Webster, if he had known of the breach, he would have avoided incurring these expenses and, therefore, the concealment of the breach constitutes an injury (incurring additional expenses) separate from the injury (receiving a lower commission rate) arising from the breach itself. *Id.* at 10–11.

---

**6.** Paragraph 7 of the Commission Agreement provides that "IWX will not charge or reimburse Agent for any costs and/or expenses incurred by Agent ... unless otherwise agreed upon in writing between the parties."

For the purposes of the motion before the Court, the parties agree to interpret the contract as prohibiting the recovery of expenses incurred in the solicitation of new customers.

While superficially appealing, this argument does not survive closer inspection. In *Infinity Products, Inc. v. Premier Plastics, LLC,* the district court in Minnesota, applying Indiana law, rejected a cause of action in fraud based on similar circumstances. 2001 WL 1631469, at *4 (D.Minn. 2001). There the plaintiff's third claim for relief alleged that the defendant breached an agreement by overcharging the plaintiff for car parts. *Id.* The fourth claim for relief charged that the defendant fraudulently failed to disclose these overcharges. *Id.* The court dismissed the fraud claim, concluding that "the misrepresentations or omissions alleged to constitute fraud are mere breaches of the [contract], and are not independently actionable." *Id.* In *Infinity,* had the plaintiff known of the overcharges, the plaintiff presumably would not have paid the extra amount for the car parts just as in the case before us, if Webster had known of the breach, he would not have spent money to find new customers for IWX. While the *Infinity* court did not address this argument specifically, the circumstances and result are so similar that the decision in *Infinity* lends support to the conclusion we reach here.

Furthermore, accepting the argument advanced by Webster would undermine the reason for not permitting every breach of contract claim to be converted into a fraud claim. As Judge Posner noted, "[w]here there are well-developed contractual remedies, ... there is no need to provide tort remedies for misrepresentation. The tort remedies would duplicate the contract remedies, adding unnecessary complexity to the law. Worse, the provision of these duplicative tort remedies would undermine contract law." *All–Tech Telecom, Inc. v. Amway Corp.,* 174 F.3d 862, 865 (7th Cir.1999). Here, Webster and IWX bargained that Webster would not be compensated for expenses incurred in fulfilling the duties of the contract. Perhaps recognizing the possibility of breach, the parties also included a provision establishing that Webster "will receive full commission for the six (6) month period following the notice of termination on all Agent's accounts that IWX services during such period and which IWX actually collects." Commission Agreement, ¶ 11. Even if Webster feels that it did not adequately protect itself when negotiating the contract, making a fraud claim out of a breach of contract does not provide a remedy for this omission.[7]

In short, Webster asks us to convert a breach of contract case into a fraud case, without citing any recent cases applying Indiana law authorizing such an action. In addition, Plaintiff fails to meaningfully distinguish this case from a number of Indiana cases prohibiting the leap. *See, e.g. Hemenway v. Peabody Coal Co.,* 159 F.3d 255 (7th Cir.1998) ("Plaintiffs essentially say that [the defendant] committed fraud because it did not alert them to the breach of contract, but if this were fraud then Indiana's prohibition of punitive damages in contract cases would be undone."); *Miller Brewing,* 608 N.E.2d at 984 (misrepresentations about distributor's sales efforts and other conduct was evidence of

---

**7.** Webster also maintains that the alleged misrepresentations surrounding the breach caused him to lose the economic benefit of the accounts to date. Supplemental Resp. at 4. We find that any such losses result from the breach itself and not from the alleged failure to disclose the breach. In an effort to explain how he would continue to benefit to date from these customers absent the misrepresen-

tations but not absent the breach, Webster suggests that he would have solicited the accounts on behalf of other shippers and would be collecting commissions from them even now. Nonetheless, we find that the six-month termination period established by the contract demonstrates that such losses should be dealt with through the application of contract law, rather than tort law.

breach of contract only, rather than of tortious conduct). Thus we conclude that IWX is entitled to partial summary judgment on the fraud and punitive damages claims brought against it.[8]

### Conclusion

As explained above, Plaintiff's Supplemental Motion for Partial Summary Judgment is *DENIED,* and Defendant's Motion for Partial Summary Judgment on issues of fraud and punitive damages is *GRANTED.*

---

**8.** Because we find that Webster did not suffer a tort independent of the breach of contract, we do not examine the facts of this case in light of the elements of fraud set forth in *Epperly* mentioned in footnote 4.